UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LESLEY ALEXANDRA SAPHOS,

           Plaintiff,

-vs-                                                        Case No.  6:06-cv-257-Orl-19DAB

GROSSE POINTE DEVELOPMENT
COMPANY, INC.,

           Defendant.
_____

## ORDER

This case comes before the Court on the following:

1.    Motion of Defendant Grosse Pointe Development Company, Inc. for Summary Judgment

      (Doc. No. 27, filed Feb. 29, 2008);

2.    Opposition of Plaintiff Lesley Alexandra Saphos to Defendant's Motion for Summary

      Judgment (Doc. No. 36, filed Apr. 2, 2008); and

3.    Motion of Plaintiff to Strike "Setoff" Argument in Defendant's Motion for Summary

      Judgment (Doc. No. 39, filed Apr. 2, 2008).

### Background

Plaintiff Lesley Alexandra Saphos filed this action under the Fair Labor Standards Act

("FLSA") against her former employer, Grosse Pointe Development Company, Inc. ("Grosse

Pointe"), alleging that Grosse Pointe failed to properly compensate her for overtime work. (Doc.

No. 1, filed Mar. 2, 2006.)  Grosse Pointe has filed a Motion for Summary Judgment, contending

that Saphos cannot meet her burden of proof to establish that she worked an excess of forty hours

per week. (Doc. No. 29.)  In support, Grosse Pointe offers three specific arguments: (1) that Saphos

fails to establish that time she spent attending "civic and charitable events" was compensable; (2) that Saphos fails to provide sufficient evidence of the amount and extent of other work that she performed outside of normal work hours; and (3) that "any amounts owed for . . . overtime would be offset" by the four weeks of severance pay that Saphos received upon her resignation. (*Id.* at 12-22.) In response, Saphos argues that genuine issues of material fact exist with respect to each issue raised by Grosse Pointe, and that Grosse Pointe's "set off argument" cannot be raised because Grosse Pointe failed to plead the defense in its Answer.[1] (Doc. No. 36 5-13.)

Grosse Pointe hired Saphos on July 26, 2004, and she worked approximately fifteen months before resigning in October of 2005.[2] (Doc. 27-2 at 2, 4, 75-77.) Saphos primarily performed administrative duties such as answering telephones, distributing mail, coordinating meetings, receiving and paying bills, and cleaning. (*Id.* at 3-4, 6.) Grosse Pointe classified Saphos as an hourly employee. (*Id.* at 11, 23-24, 67.) At some Pointe, Saphos' supervisor, Sam Evans, told Saphos that the company would hire her as a full-time, forty hour per week employee to make her eligible for employee benefits. (Doc. No. 27-3, ¶ 5.)

It is undisputed that Grosse Pointe did not utilize a time clock or electronic timekeeping system to keep track of Saphos' hours. (Doc. No. 27-3, ¶ 6.) However, the parties dispute whether her hours were otherwise recorded. Grosse Pointe contends that Saphos initially recorded her hours, but the "times that she had entered on the time sheet were incorrect." (Doc. No. 27 at 4 (citing Doc. No. 27-3, ¶ 7).) Saphos contends that she initially recorded a work-week of 41.25 hours, but after

---

[1]     Saphos also filed a Motion to Strike Grosse Pointe's Summary Judgment Motion to the extent it seeks summary judgment on the basis of a "set-off." (Doc. No. 39.)

[2]     Grosse Pointe develops real estate in Orlando and Fort Meyers, Florida. (Doc. No. 27-3, ¶ 1.)

her time sheet became a point of contention, she was instructed to "submit to the 40 hours a week and just put those hours down." (Doc. No.  36-3 at 1.)  Saphos testified that after this first week, Grosse Pointe created her time sheet and recorded less than forty hours per week, regardless of how many hours she actually worked. (*Id.* at 1-3, 6-7.)

Although she could not remember specific dates or weeks, Saphos testified that she regularly worked over forty hours per week. (Doc. No. 27-2 at 16, 18, 29-30.)  According to Saphos, the overtime hours were the result of the following activities: working lunches (*id.* at 8-9, 31); attending early morning meetings at Foley & Ladner (*id.* at 86); letting the cleaning lady into the office after work hours (*id.* at 77); picking up employees at the airport outside of business hours (*id.* at 113-15); and attendance at off-site "business functions" (*id.* at 38-48, 68-69; Doc. No. 36-6 at 4-5).

Grosse Pointe appears not to dispute that Saphos may have worked during lunch, attended early meetings at Foley & Ladner, and let the cleaning lady into the office after hours. (Doc. No. 27 at 17-19.)  However, the company contends that any time spent on these activities was offset because (1) Evans sometimes closed the office early after the Foley & Ladner meetings, and (2) Saphos sometimes spent time during the day performing personal tasks. (Doc. No. 27-3, ¶ 14; Doc. No. 27-2 at 80-109.)  Grosse Pointe also maintains that the cleaning lady cleaned the office only fourteen times while Saphos was employed, and that it "would take no longer than ten minutes to open the door" for her. (Doc. No. 27-3, ¶ 16; Doc. No. 27 at 18-19.)  Regarding trips to the airport, Evans stated that he did not recall Saphos picking up guests after hours and that any trip she made would be during normal business hours. (Doc. No. 27-3, ¶ 12.)

Finally, Grosse Pointe characterizes time spent at off-site business functions as "attendance at community and civic events." (Doc. No. 27 at 12.)  Grosse Pointe emphasizes that Evans did not

require Saphos to attend any of these events but rather encouraged Saphos to become involved in the community and join some organizations of her choosing.  (*Id.* at 14; Doc. No. 27-2 at 68-69.)

Saphos ended her employment in October of 2005 after being accused of insulting a partner at a company event.  (Doc. No. 27-2 at 76.)  In lieu of termination, Grosse Pointe allowed Saphos to resign and receive four weeks of severance pay.  (*Id.* at 77.)  According to Saphos, the agreement stipulated that her resignation would become formal in one month and that she would remain available for work until then.  (Doc. No. 36-9 at 2-3.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Id.* at 1260.  A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most

favorable to the party opposing the motion and resolves all reasonable doubts against the moving

party. *Anderson*, 477 U.S. at 255.  The court may not weigh conflicting evidence or weigh the

credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

If a reasonable fact finder could draw more than one inference from the facts and that inference

creates an issue of material fact, a court must not grant summary judgment. *Id.*  On the other hand,

summary judgment must be granted "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which the party will bear

the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**Analysis**

An employee who brings suit under Section 216(b) of the FLSA has the burden of proving

that he or she "performed work for which he was not properly compensated." *Anderson v. Mt.*

*Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as stated*

*in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972).  Normally an employee may

"easily discharge his burden" by securing and producing the relevant employment records from the

employer. *Id.* at 687.  However, when the employer's records are inaccurate or inadequate, an

employee carries out his or her burden by "produc[ing] sufficient evidence to show the amount and

extent of that work as a matter of just and reasonable inference."[3] *Id.*  Upon such a showing, "[t]he

burden then shifts to the employer to come forward with evidence of the precise amount of work

performed or with evidence to negative the reasonableness of the inference to be drawn from the

---

[3]     The Parties do not dispute that this is the appropriate burden of proof.  (Doc. No. 27 at 10-11; Doc. No. 36 at 5-7.)

employee's evidence." *Id.* at 687-88; *see also Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982).

As explained below, Saphos has raised a genuine issue of material fact with respect to each of Grosse Pointe's factual arguments. Accordingly, there is sufficient evidence for a reasonable jury to find that she has demonstrated the "amount and extent of [her overtime] work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 697.

### A.    Off-Site Events

Grosse Pointe first contends that Saphos is not entitled to compensation for the hours she spent at off-site events because the events were "public or charitable" in nature and attended voluntarily. (Doc. No. 27 at 12-16.) Saphos responds that these events were not "public or charitable," and that she attended at the direction of her employer. (Doc. No. 36 at 8-11.)

Congress did not provide a definition of "work" or "employment" in the FLSA, leaving it "to the courts to determine which employment-related activities are compensable under the Act." *Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997). In this role, courts have generally construed the term "work" to mean "all activities controlled or required by the employer and pursued necessarily and primarily for the benefit of [the] employer and his business." *Id.*

Despite the Act's failure to define "work," however, the Department of Labor promulgated rules governing when offsite "work" is compensable. According to 29 C.F.R. section 785.12, work performed away from the premises or job site is compensable if the "employer knows or has reason to believe that the work is being performed." In addition, a special rule applies when "work for public or charitable purposes" is involved:

> Time spent in work for public or charitable purposes at the employer's request, or under his direction or control, or while the employee is required to be on the

premises, is working time. However, time spent voluntarily in such activities outside
of the employee's normal working hours is not hours worked.

29 C.F.R. § 785.44.[4]   Thus, when the employee spends time at a "public or charitable" event, the

regulation identifies three scenarios in which the employee is due compensation and one in which

the employee is not.  On one hand, the employee must be compensated for "work" at "public or

charitable" events (1) when requested by the employer; (2) when subject to the employer's direction

or control; or (3) when the employee would normally be required to be on the premisses.  *Id.*  On

the other hand, an employee is not entitled to compensation for time "voluntarily" spent at such an

event.  *Id.*; *see also Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 527 (5th Cir. 2004).[5]

It is unclear from the record whether Saphos attended "business" events, as she contends,

or "public or charitable" events, as Grosse Pointe contends.  Saphos testified that she attended the

events to promote Grosse Pointe.  (Doc. No. 36-6 at 152.)  She also emphasizes that the events were

held by private and business organizations such as the East Orange Chamber of Commerce,

Executive Women International, and Commercial Real Estate Women.  (Doc No. 36 at 9.)  By

contrast, Grosse Pointe appears to label these events as "public or charitable" based on its contention

---

[4]        Section 785.44 does not appear to be compatible with the Eleventh Circuit's
definition of the term "work."  In *Alvarez*, the Court defined work as "pursued necessarily and
primarily for the benefit of [the] employer and his business," whereas section 785.44 governs the
compensability of "work for public or charitable purposes." *Alvarez*, 124 F.3d at 1384.  The contrast
between the wording of the first and second sentences of section 785.44 suggests that "work," for
purposes of the section, is time spent pursuing the public or charitable cause at the direction of the
employer, versus time "voluntarily" spent pursuing the public or charitable cause.

[5]        In addition, section 785.27 governs compensation for "[a]ttendance at lectures,
meetings, training programs and similar activities."  Neither party relies on or cites to this section.

that Saphos attended voluntarily.  (*See* Doc. No. 27 at 12-16.)[6]  Grosse Pointe does not offer any

evidence suggesting that the events served a "public or charitable" purpose.

   Nevertheless, genuine issues of material fact exist regardless of which rule applies to this

case.  Saphos testified that she attended these functions, at the direction of her supervisor, to

promote Grosse Pointe.  (Doc. No. 36-6 at 152.)  If the events are considered to be for a "public or

charitable purpose," a reasonable juror could find that Saphos attended at the request of her

employer or subject to her employer's control.  29 C.F.R. § 785.44.  If her attendance at the events

is subject to the more general "work" rule, a reasonable juror could find that her attendance was

"controlled" by the employer, done "primarily for the benefit" of the employer, and that her

employer had reason to believe that she was attending the events.  *Alvarez*, 124 F.3d at 1384; 29

C.F.R. § 785.12.  Thus, Grosse Pointe has not established as matter of law that these hours are non-

compensable.

## B.    Other Work Outside of Normal Hours

Grosse Pointe's primary factual argument with respect to Saphos' other claimed overtime

work is that her claimed time must be offset because (1) Evans sometimes closed the office early

after the Foley & Ladner meetings, and (2) Saphos sometimes spent time during the day performing

personal tasks.  (Doc. No. 27 at 17-19.)  Grosse Pointe also contends that there is evidence that

Saphos did not pick up guests at the airport outside of regular working hours.  (*Id.* at 16-17.)

---

   [6]    For example, Grosse Pointe argues: "The record is undisputed that Ms. Saphos did not suffer a job detriment based upon her failure to attend an [Economic Development Commission] event, nor did she ever believe that her job was in jeopardy for failing to attend any of these events. Therefore, her attendance at the EDC events, which occurred outside of regular business hours, would be voluntary and non-compensable."  (Doc. No. 27 at 15 (citations omitted).)

Genuine issues of material fact exist with respect to both arguments.  Both the amount of overtime hours Saphos worked and the hours which Grosse Point seeks to subtract from that number are disputed.  Furthermore, Saphos testified during her deposition that she picked up guests from the airport outside of regular work hours. (Doc. No. 36-6 at 7-8.)

### C.      Severance Pay as a "Set-Off"

Finally, Grosse Pointe argues that it paid four weeks of severance pay to Saphos, and that this sum completely sets-off any overtime compensation which it may have failed to pay her.  (Doc. No. 27 at 19-21.)   Employers in FLSA cases may "set-off" sums owed under the FLSA by the amount of a successful counterclaim against the employee.  *Mercer v. Palm Harbor Homes, Inc.*, No. 8:05-CV-1435-T30-TGW, 2005 WL 3019302, at *1-2 (M.D. Fla. Nov. 10, 2005).  Some courts have also permitted employers to plead "set-off" as an affirmative defense where the employer paid the employee funds to which the employee was not entitled.  *Reasoner v. All Seasons Pool Serv., Inc.*, No. 6:06-cv-1819-Orl-19-DAB, 2007 WL 4326808, at *9-10 (M.D. Fla. Dec. 7, 2007); *Timbensky v. C.D.C. Acquisition Corp.*, No. 6:05-cv-820-Orl-28-DAB, 2005 WL 1949825, at *1 (M.D. Fla. Aug. 12, 2005).

In this case, Grosse Pointe neither asserted a counterclaim against Saphos nor plead "set-off" as an affirmative defense.  As a result, Grosse Pointe is barred from now raising "set-off" as a defense.[7]  *See*, *e.g.*, *Houlihan Lokey Howard & Zukin Capital, Inc., v. Protective Grp., Inc.*, 504 F. Supp. 2d 1230, 1243 (S.D. Fla. 2007) (defendants waive affirmative defenses that are not plead in the answer).

---

[7]      Significantly, Grosse Pointe is raising this issue only one month before trial and nearly seventeen months after the deadline for amendments to the pleadings. (Doc. No. 20, filed Sept. 12, 2006.)

**Conclusion**

Based on the foregoing, the Motion of Defendant Grosse Pointe Development Company, Inc.

For Summary Judgment (Doc. No. 27, filed Feb. 29, 2008) is **DENIED**.  The Motion of Plaintiff to

Strike "Setoff" Argument in Defendant's Motion for Summary Judgment (Doc. No. 39, filed Apr.

2, 2008) is **GRANTED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April _9_, 2008.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record